## BASSICK CO. v. FAULTLESS CASTER CORPORATION.

### No. 6764.

Circuit Court of Appeals, Seventh Circuit.

June 24, 1939.

Ralph G. Lockwood and Elmer L. Goldsmith, both of Indianapolis, Ind., for appellant.

Lynn A. Williams and Benjamin F. Wupper, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellee charged appellant with the infringement of United States patent to Herold No. 1,752,983, which was issued April 1, 1930, on an application filed December 5, 1927. Claims 3 and 4[1] are relied upon and the defenses are non-infringement and invalidity. The court found both claims valid and infringed, decreed the usual injunctive relief and awarded an accounting of profits.

The disclosures of this patent relate to improvements in casters, particularly of

---

[1] "3. In a support, a floor engaging element including a pintle, pintle receiving means for removably receiving said pintle and adapted to be secured to a furniture leg or the like, a split spring ring secured to said pintle receiving means and adapted to be expanded by engagement of said pintle and contracted upon removal of said pintle, and cooperating means acting between said ring and said pintle receiving means adapted to centralize said ring in its contracted relation, said ring adapted to retain said pintle with respect to said pintle receiving means.

"4. In a support, a floor engaging element including a pintle, pintle receiving means adapted to be secured to a furniture leg or the like, a split spring ring adapted to be expanded and contracted, securing means carried by said pintle receiving means, and cooperating means acting between said ring and said securing means adapted to centralize said ring in its contracted relation and to loosely and rotatably retain the same in its expanded relation, said ring being adapted to grip said pintle and being rotatable therewith with respect to said pintle receiving means."

the type having a caster socket in which the pintle is inserted. Its principal object is to provide improved retaining means for removably securing the caster pintle in place, and at the same time permitting a free swiveling of the caster. Another object is to provide such means associated with the base of the socket, that the frame of the socket and the pintle may be of any desired size or shape without regard to the retaining means; and further to provide such means of simple and economical construction adapted to be assembled conveniently by modern production methods. Another object is to provide a retaining means which will be self-centering in the detached relation of the pintle, so that there will be no possibility of the pintle jamming against it during insertion, and which in its operative relation with the pintle will have unimpeded swiveling movement.

The caster disclosed is adapted for insertion in a tubular metal leg, and, as shown by the figures, specifications and exhibits, comprises a base plate or washer having a central aperture, flanged upwardly to provide a bearing for the pintle, and having a lateral flange bent outwardly from the top of the upward flange to provide supporting means for the pintle retaining spring ring. The frame consists of side leg portions bent at their lower ends about the periphery of the base plate, to secure the frame thereto, and a connecting top portion provided with a central domed portion having a top pintle bearing, in the form of an inverted cone, pressed therein.

The detachable caster consists of the usual horn having the caster wheel rotatably carried therein upon an axle and having the pintle secured in its upper transverse portion, the pintle being provided at its lower portion with an enlarged diameter cylindrical portion, tapering to the upper smaller diameter portion. At the upper end of the pintle there is provided a cone-shaped recess adapted to engage the center top bearing of the frame.

The pintle retaining means consists of a split spring ring adapted to be rotatably connected to the lateral flange and to frictionally grip upon the pintle. In the embodiment disclosed, the retaining means is formed of sheet metal and consists of a flat outer portion adapted to seat upon the lateral flange, and a beveled flanged inner portion, the latter having a two-fold func-

tion of imparting the necessary tension to the sheet metal and providing a beveled lead surface for guiding the pintle into the socket without any chance of jamming or distorting the ring. At the outer edge of the ring there are provided a series of projecting lugs, four as shown, bent downwardly and inwardly about the lateral flange above referred to, to connect the ring thereto. These lugs, when the pintle is removed, are adapted upon contraction of the ring to centralize the ring upon the flange, and through a slight gripping relation with that flange to retain the ring against movement, the same being free, however, in the expanded relation with the pintle inserted. The split in the ring is preferably midway between two of the lugs. The ring may be preferably formed with three of the lugs bent into retaining relation, so that the ring may be simply slipped over the lateral flange and thereupon secured by bending the fourth lug. In the inoperative or unexpanded relation of the ring it projects slightly within the diameter of the pintle bearing flange but is of larger diameter than the reduced upper portion of the pintle so that the latter may be easily inserted for a substantial distance before the gripping action of the ring takes place. The enlarged portion of the pintle will expand the ring and thus be held thereby against dropping out of the socket, the ring being snugly held about the pintle and freely rotatable with respect to the lateral flange, so that there is no tendency to frictionally resist or retard the swiveling action of the caster. The pintle has a top bearing upon the center top bearing and is held vertically by the substantial bottom bearing provided by the upward flange of the base plate, the flanged structure of the base providing a very strong rigid construction adapted to withstand heavy side strains.

It is admitted that casters are simple devices and, in general, are very old, and the field for invention with respect thereto was limited. Within that field, however, Herold claims to have made a neat little improvement. A caster, in its usual form, consists of a socket which is fastened in the leg of a table, or the like. The socket receives the pintle, which is the pin or rod attached to the horn which in turn carries the wheel or roller. These elements are all quite old in the art.

It has never been feasible to secure permanently the caster in the socket, for in the shipment of furniture it is necessary

to remove the casters in order to avoid loss or breakage. For this reason the custom has long been established to sell the sockets and casters separately. This is done because the sockets are made in a large variety of sizes in outside diameter, so as to fit the different sizes of tubular legs. All of the caster pintles, however, are made of the same diameter so as to be interchangeable.

Herold thought it desirable that the pintle should have a flat top with a vertical depression in its top, because, as he said, it was easier to manufacture, and the depression formed a retaining well for lubricant so that the caster might be used for a long time without squeaking. With these thoughts in mind Herold made the present disclosures and contends that the point of invention here involved resolves itself into the holding means of retaining the caster from coming out of the socket.

There are nine claims which, collectively, cover everything upon which he bases his infringement charges. This action, however, is based upon the alleged infringement of claims 3 and 4, and we think the real question is whether or not these claims are so broad that they cannot be sustained in view of the prior art.

The appellant employs only the upward flange from the base plate and omits entirely the lateral flange and the lugs as shown in the patent. The upward flange constitutes a bearing for the pintle. It is a part of the base plate, and its use as a pintle bearing is quite old in the art. Maccuaig, No. 943,432; Johnson, No. 1,232,688; and Gail, No. 1,424,466. It is not contended that this upward flange constitutes a new element in the patent.

Instead of using a lateral flange and a ring fastened by lugs to the lateral flange of the patent, appellant merely uses a long slitted sleeve which extends from the base plate into the dome at the top of the frame. The bottom part of this sleeve is flared into a bell shape so that when it is in position it loosely surrounds the upward flange and rests upon the base plate. This sleeve does not fit tightly into the dome or around the upward flange, and it rattles considerably when shaken either laterally or vertically. It is permanently held in position, however, and never becomes decentralized from the entrance hole of the pintle and it can never interfere with the entrance of the pintle into the socket. The pintle is inserted into the socket and when the larger portion of

the pintle passes into the spring sleeve, the pintle is held against removal in the same manner that the ring of the patent holds its pintle. In appellant's device the point of the pintle passes upwardly through the spring sleeve to the top of the dome where it engages the same sort of a bearing and in the same manner as that disclosed by the patent. While the tops of both pintles are flat in a certain sense, yet the sharp edges at the top are rounded so as to prevent any portion of the ring or sleeve from deterring the passage of the pintle, and each has a decided depression in its end which forms a bearing in combination with the inverted cone in the top of the dome. Notwithstanding the differences in construction of these two devices, it is obvious that the claims in suit read upon appellant's structure. These claims contain but few limitations, and they likewise read on other prior art structures which were not cited by the Patent Office during the prosecution of this patent.

In the Hardenbergh patent, No. 473,924, the frame is in the shape of an inverted tube with an enclosed upper end. At the bottom of this tube is an enlarged portion having on the inner side a small annular groove in which a split clasping ring is secured so as to be held loosely therein. This ring is made of small tempered steel wire, or the like. It is made to fit loosely in the annular groove in order that it may have sufficient space in which to expand when the pintle is inserted. The annular groove is not sufficiently large to permit the ring to become decentralized with respect to the pintle entrance when the ring is contracted. In other words, the ring is held in centralization by the walls of the annular groove. The ring is held in vertical position by a centrally perforated base plate which is attached to the leg, or the like, by means of screws. The pintle is an ordinary tapered structure with its lower portion somewhat larger than the inner circumference of the ring so that when the pintle is fully inserted the expansion of the spring ring holds the pintle in place.

As in claim 3, Hardenbergh shows a floor engaging element, including a pintle; pintle receiving means for removably receiving the pintle and adapted to be secured to a furniture leg or the like; a split ring loosely confined within the pintle receiving means and adapted to be expanded by engagement of the pintle and contracted upon removal of the pintle; the groove of the pintle receiving means adapted to cen-

tralize the ring in its contracted relation; and the ring retaining the pintle with respect to the pintle receiving means.

Appellee urges that Hardenbergh's pintle is tapered with a rounded bearing at the top. There is nothing, however, found in the claims that limits Herold to a cylindrical pintle square at the top, and the exhibits of his product do not disclose a pintle perfectly square at the top. The edges are rounded for the purpose of preventing the pintle from catching upon the contracted ring.

Moreover, the British patent No. 8582 to Appleby discloses every element of claims 3 and 4 to the same extent as do Hardenbergh's and the appellant's structures. Appellee contends that Appleby cannot use any diameter of socket, but the claims make no mention of this feature. It is further urged by appellee that Appleby's gripping sleeve is loose or less centered when the pintle is removed than when the pintle is in place; and it further urges that Appleby's sleeve is externally centered, whereas the ring of the patent and the sleeve of appellant are internally centered. The claims, however, contain no limitations whatever with respect to these features. They are drawn to a structure which may center the ring or sleeve either internally or externally. Appleby's sleeve is centered loosely, but not quite so loosely as appellant's. Neither of them is positively or accurately centralized, but both are confined within such limits as to permit the entrance of the pintle. To the extent that either of the claims in issue may be applied to appellant's structure, they are readable upon Appleby to the same extent and in the same manner. Each has a floor engaging element together with the pintle; pintle receiving means for removably receiving the pintle, and adapted to be secured to a furniture leg or the like; a slit ring sleeve loosely confined, both axially and laterally, within the pintle receiving means, and adapted to be expanded by engagement of the pintle and contracted upon its removal; surrounding walls adapted to centralize the sleeve in its contracted relation; and a sleeve adapted to retain the pintle with respect to the pintle receiving means.

It is further contended by appellee that its spring ring by its contraction centers itself upon the pintle entrance. The claim makes no mention of this feature. On the contrary, it points out that the centraliza-tion of the ring upon contraction is caused by other cooperating means acting between the ring and the pintle receiving means. This of course refers to the lugs which confine the ring snugly to the lateral flange. These are precisely what centralize the ring, or rather they keep the ring from ever becoming decentralized. The ring contracts itself but it performs no part in its centralization, because it never becomes decentralized to the extent that it would ever interfere with the working of the pintle.

It is worthy of note that claims 3 and 4 as originally presented were rejected by the examiner, and in order to secure their allowance over Herold's prior patents Herold explained to the examiner, "These claims define a structure in which the ring is centralized in its contracted relation by contracting tightly upon the securing means, so that before insertion of the pintle the ring is held against rattling, and its aperture is positively and accurately centralized for accurate insertion of the pintle. In applicant's patent No. 1,649,526 (which was Herold's prior patent), the ring is loose in its contracted relation and is not positively centralized." He further stated to the examiner in respect to claim 3: "In the present device the ring which is carried by the pintle receiving means is expanded upon insertion of the pintle, and contracts into snug relation with the centering means upon removal of the pintle."

[1-4] We are quite in accord with the statements of Judge Hand in Spalding & Bros. v. John Wanamaker, 2 Cir., 256 F. 530, with respect to the misuses of the arguments of an applicant to the examiner for the purpose of limiting or extending claims, because it involves looking at the preliminary negotiations in the interpretation of the formal document intended to be the final memorial of the parties' intentions. That case and similar cases go to the proposition that the terms of a claim should not be limited or extended by mere extraneous remarks of the applicant in argument without an actual amendment of the claim to that effect. Whether the established rule is contrary to this principle is beside the point now before us, for appellee is not here asking that its claim be limited but, on the other hand, it is asking that it be not so limited. Under these circumstances we shall not consider the applicant's argument to the Commissioner for the purpose of now changing the plain wording of his claim. However, we have

considered such argument and the other parts of the file wrapper to aid us, if possible, in determining what new thing, if any, Herold disclosed and what he was trying to protect under this claim. A perusal of the entire record convinces us that the improvement which he disclosed, and he says it was little, was merely doing away with the rattle, but the claims were never amended to cover this feature and they cannot be so construed. Appellant's structure makes no effort to eliminate the rattle in the caster, and in all other respects it follows the teachings of Hardenbergh and Appleby. We think that the claims in suit as they stand read alike upon Hardenbergh and Appleby, as well as upon appellant's structure. The claims are invalid because they are too broad. Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co., 7 Cir., 243 F. 861, 870.

The decree of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.