**SLIMFOLD MANUFACTURING COMPANY, INC., Plaintiff,**

**v.**

**KINKEAD INDUSTRIES, INC. and United States Gypsum Company, Defendants.**

Civ. A. No. C78–1798A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 20, 1984.

Robert E. Richards, Jones & Askew, Atlanta, Ga., for plaintiff.

Patrick F. Henry, Jr., Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on plaintiff's "Motion to Enforce Defendants' Agreement to be Bound and to Strike Defendants' Second Motion for Summary Judgment" and on plaintiff's related motion for partial summary judgment. Consideration of both motions requires a discussion of the history of this action.

Plaintiff filed this action on October 20, 1978, alleging that the defendants had infringed United States Patent Number 3,810,274 (hereinafter referred to as the '274 patent). After extensive discovery defendants moved for an order compelling plaintiff to submit the '274 patent to a reissue proceeding pursuant to 37 C.F.R. §§ 1.171–1.179. Defendants' brief in support of the motion explained the nature of a reissue proceeding and pointed out that during such proceeding the defendants "and others who have an interest in the subject matter of the patent, can identify to the PTO (Patent and Trademark Office) prior art that they regard as anticipatory, explain why the patent claims are anticipated by such prior art, *and set forth all other grounds upon which they believe the patent or any of its claims should not have been allowed.*" "Memorandum in Support of Defendants' Motion for Order that Plaintiff be Required to File Application for Reissue of the Patent in Suit under Rule 1.175 and that Proceedings Herein be Stayed Pending Termination of Proceedings on that Application" (emphasis added).

On page 7 and 8 of that brief defendants intimated that plaintiff had violated its duty to disclose prior art and asserted that such failure to disclose cast a shadow upon the validity of the '274 patent.

Plaintiff vigorously opposed defendants' motion to compel it to seek reissue of the '274 patent, arguing that the motion was interposed for delay and that defendants had no right under law to compel plaintiff to seek reissue of its patent. Plaintiff conceded, however, that some courts had compelled reissue. Plaintiff's reply brief contains the following request:

> In addition, should this court be inclined to grant Defendants' Motion, Plaintiff requests that Defendants be bound by the decision of the Patent Office. The entire reissue process would be wasteful in both time and money if, after submission to reissue, Defendants were permitted to raise the same issues again at trial. Accordingly, Plaintiff submits that Defendants, as the moving party, should be required to be bound by any Patent Office determinations in a reissue proceeding in which Defendants participate. "Plaintiff's Brief in Opposition to Defendants' Motion for Order Compelling Plaintiff to File Application for Reissue of the Subject Patent under 37 CFR § 1.175(a)(4) and for Stay of Proceedings Herein Pending Conclusion of Reissue Proceedings" at p. 15–16.

Defendants responded to plaintiff's allegation that the motion was brought for purposes of delay and stated:

> To demonstrate the genuineness of Defendants' Motion, *Defendants fully agree with Plaintiff's request that Defendants be bound by the decision of the Patent Office,* and Defendants will stipulate that prior art considered by the Patent Office during the reissue proceedings will not be submitted to the jury or otherwise used as a defense should it be necessary to have a trial, insofar as validity is concerned but not infringement. Defendants' Rejoinder to Plaintiff's Brief in Opposition to Defendants' Motion for Order Compelling Plaintiff to File Appli-

cation for Reissue under 37 CFR § 1.175(a)(b) and for Stay of Proceedings, at p. 1–2 (emphasis added).

Defendants' brief then discussed, as support for its argument that a reissue proceeding was necessary, how various foreign patent offices had treated the corresponding foreign patents.

After both sides had filed additional briefs and cases, Judge Evans issued an order on December 17, 1979 denying defendants' motion. Judge Evans held that 35 U.S.C. § 251 (which governed reissue proceedings), indicated a congressional intent that such proceedings could be sought by the patent holders, but not by anyone else, including defendants in an infringement suit. Judge Evans found that 37 C.F.R. § 1.172(a) showed that this was the understanding of the Patent and Trademark Office. Finally, Judge Evans noted a recently introduced bill to amend the patent laws which would have provided that "any party to a civil action shall have the right, by motion brought before any responsive pleading, to secure a stay of all proceedings ... and to request reexamination of the patent in view of such prior art ...." Judge Evans pointed out that "the need for such an amendment shows that the existing patent laws do not contemplate that a non-patent holder in an infringement action be able to force a patent holder to apply for reissue."

Shortly before Judge Evans issued her order, the case had been reassigned to Judge Hall. Defendants sought an order from Judge Hall vacating Judge Evans' order and compelling plaintiff to submit its patent to a reissue proceeding. After both sides had submitted further briefs and authorities, Judge Hall issued an order vacating Judge Evans' order and compelling plaintiff to submit the '274 patent to a reissue proceeding. Judge Hall concluded that the provisions of 37 C.F.R. §§ 1.171–179 did not preclude a federal court from compelling a patentee to seek reissue. Judge Hall relied on *Sheller Globe Corp., et al. vs. Mobay Chemical Corp.,* 204 USPQ 1052 (E.D.Mich., Southern Div., Jan. 24, 1980) which had held that a district court has "inherent power" to order a reissue application. Judge Hall plainly felt that compelling reissue would serve the goal of judicial economy and in the long run simplify the issues in the case.

Plaintiff filed its application for reissue, and defendant filed a protest to the reissue pursuant to 37 C.F.R. § 1.291. Defendants simultaneously filed a petition to strike the reissue application pursuant to 37 C.F.R. § 1.56(d). 37 C.F.R. § 1.56 (hereinafter referred to as Rule 56) imposes upon applicants for patents a strict duty of candor and good faith towards the Patent and Trademark Office. At the time the petition to strike was filed Rule 56 provided:

(a) A duty of candor and good faith toward the Patent and Trademark Office rests on the inventor, on each attorney or agent who prepares or prosecutes the application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. All such individuals have a duty to disclose to the Office information they are aware of which is material to the examination of the application. Such information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. The duty is commensurate with the degree of involvement in the preparation or prosecution of the application.

· · · · ·

(d) An application shall be stricken from the files if it is established by clear and convincing evidence that any fraud was practiced or attempted on the Office in connection with it or that there was any violation of the duty of disclosure through bad faith or gross negligence.

Defendants raised three enumerated grounds for striking plaintiff's application for reissue: (1) Non-disclosure of § 103 prior art; (2) non-disclosure of evidence of

prior public use and/or sale; and (3) misrepresentation of the inventorship of the subject matter of the claims in the reissue application. In addition, defendants devoted almost half of their brief to the argument that plaintiff had obtained several foreign patents by fraud on those foreign patent offices. Defendants argued that by reason of this fraud on the foreign patent offices,

> Applicants must be held accountable for their "unclean hands," and petitioner requests that U.S. Patent No. 3,810,274 be held unenforceable which would be an appropriate remedy. In prosecuting the foreign patent applications, applicants relied upon the U.S. patent application for its Convention priority date, and in litigating U.S. Patent No. 3,810,274, the patent owner is relying upon the fraudulently obtained foreign patents to support patentability and validity. Petitioner contends that this interrelationship is sufficient to hold the U.S. Patent, whose prosecution is also tainted by violation of the duty of disclosure, unenforceable. "Petition to Strike Reissue Application Serial Number 06/172,255 under 37 CFR § 1.56(d)" (attached as Exhibit 3 to Plaintiff's Motion to Enforce Agreement to be Bound and to Strike Defendants' Second Motion for Summary Judgment), at 12.

Plaintiff responded to Defendants' arguments concerning fraud on the foreign patent offices, and defendants filed a reply brief which further argued that the fraud on the foreign patent offices should be grounds for striking the application for reissue:

> In essence, petitioner is requesting that "fraud" or "violation" of the duty of disclosure practiced on the U.S. Patent and Trademark Office or on any Foreign Patent Office shall render such U.S. patent application or any U.S. patent issuing therefrom subject to being stricken under 37 CFR § 1.56(d). As in this case, where the applicants relied upon their U.S. patent application Serial No. 382,486 as a Convention application to deceive the Patent Offices in France, Italy and Holland, such application and correspond-

ing patent should be stricken or otherwise held to be invalid. The duty of candor and complete disclosure in prosecuting a patent application should apply universally and should not be limited to activities in the United States. Surely, the U.S. Patent and Trademark Office does not condone fraud and deceit in the filing and prosecution of foreign patent applications corresponding to U.S. patent applications and reliance thereon for an effective filing date.

. . . . .

> ... Petitioner urges that whenever the U.S. Patent and Trademark Office discovers fraudulent conduct relating to or involving a United States patent or patent application, *the Patent and Trademark Office has the authority and the duty to strike such applications and to recommend to the United States Courts that such patents be held unenforceable.* "Petitioner's Reply to Slimfold's Response to Petition to Strike under 37 CFR 1.56(d) and Response to Requirement for Information" (attached to Plaintiff's Reply to Defendants' Brief in Opposition to Plaintiff's Motion to Enforce Agreement to be Bound and to Strike Defendants' Second Motion for Summary Judgment) at 9, 11.

The Patent and Trademark Office denied defendants' petition to strike. In doing so it necessarily held that none of the grounds asserted by defendants warranted striking the application for reissue. After disposing of petitioner's arguments concerning failure to disclose prior art, the PTO decision states:

### PROTESTER'S OTHER ARGUMENTS

Protester in the papers filed November 28, 1980 and December 3, 1982 asserts three other grounds in addition to the allegation of improper withholding of the Roberts Fold Door brochure discussed above. These three other grounds are:

> 1. That applicant withheld information regarding on-sale activity;

2. That applicant misrepresented the correct inventive entity; and

3. That applicant practiced fraud on one or more foreign patent offices which is grounds for finding a violation of Rule 56 in this reissue application.

. . . . .

The third and final ground alleged by protester asserts that applicant was aware of a public use which barred applicant from obtaining a patent in several foreign patent countries which had an absolute novelty requirement. Nonetheless, (as asserted by protester) applicant filed applications in one or more of those foreign countries and such filing(s) represents a fraud on those patent offices. Protester argues that such fraud taints the earlier filed U.S. application (herein sought to be reissued) and that the present reissue which stems from that application should be similarly held to be tainted by the fraudulent conduct.

There are numerous reasons why protester's assertions as to this third ground must be dismissed. First, and even assuming arguendo that protester's assertions as to the facts are correct, applicant's conduct before the foreign patent offices does not appear to bear directly on the issues affecting this U.S. application. The issues in this application are adequately treated under U.S. laws and practice. That is, the facts asserted are properly considered under U.S. law for treating this application. There is no compelling reason why this office should consider what treatment might be appropriate for the corresponding applications in foreign countries.

*For the above reasons and others, the alleged violation based on the above noted third ground is held not to be a violation of 37 CFR 1.56(a).* Commissioner's Decision Refusing Action under 37 CFR § 1.56 (August 24, 1983) (attached as Exhibit 4 to Plaintiff's Motion to Enforce Agreement to be Bound and to Strike Defendants' Second Motion for Summary Judgment) (emphasis added).

On April 17, 1984 the Patent and Trademark Office reissued the '274 patent as patent number 31,553 (hereinafter referred to as the "Ford patent"). On April 23, 1984 plaintiff moved to restore this case to the trial docket in light of the PTO's action and at the same time moved for partial summary judgment as to the validity of the '274 patent and the Ford patent on the grounds that defendants had agreed to be bound by the PTO's decision. Defendants opposed plaintiff's motion for partial summary judgment, arguing that the Ford patent was not at issue in this proceeding and that they had only agreed to be bound by the PTO's decision concerning the '274 patent. Defendants then argued that the '274 patent no longer exists, as it was surrendered to the PTO as part of the reissue proceeding.

Defendants later filed two motions for summary judgment. The second motion for summary judgment asked the court to hold the '274 patent and the Ford patent unenforceable due to plaintiff's "unclean hands" in committing fraud on the various foreign patent offices. Rather than respond to defendants' second motion for summary judgment, plaintiff complained that defendants were violating their agreement to be bound by the decision of the patent office and asked the court not to consider defendants' motion. A conference was held on September 14, 1984, at which time the court heard arguments from the parties concerning the agreement to be bound and concerning the PTO's decision. The court directed the parties to file briefs on the issue of the PTO's jurisdiction to consider the issues of plaintiff's inequitable conduct or unclean hands in connection with the foreign patent applications in the context of a reissue proceeding. Those briefs took the form of the present motion to enforce the agreement to be bound and to strike defendants' second motion for summary judgment.

After consideration of the entire record in this case, including the events described above, and after consideration of the arguments and authorities submitted by both

sides, the court makes the following findings of fact and conclusions of law.

## I. DEFENDANTS' AGREEMENT TO BE BOUND BY THE DECISION OF THE PTO.

■ The court finds that defendants did agree to be bound by whatever the Patent and Trademark Office did on the reissue application. At the time they filed their motion to compel plaintiff to file an application for reissue of the patent, defendants already had the information concerning the fraud on the foreign patent offices. In explaining the reissue process to the court in its brief in support of the motion, defendants pointed out that protestors could intervene in the reissue proceeding and in addition to identifying prior art, "set forth all other grounds upon which they believed the patent or any of its claims should not have been allowed." Plaintiff's argument to the court that defendants should be bound by the decision of the PTO clearly contemplated that defendants should be bound by everything the PTO did:

> The entire reissue process would be wasteful in both time and money if, after submission to reissue, defendants were permitted to raise the same issues again at trial. Accordingly, plaintiff submits that defendants, as the moving party, should be required to be bound by any patent office determinations in a reissue proceeding in which defendants participate.

This request by plaintiff clearly contemplated that defendants should be bound by any decision by the patent office, not just decisions concerning prior art. In response to this request defendants stated, "Defendants fully agree with plaintiff's request that defendants be bound by the decision of the patent office...." For defendants now to argue that they only agreed to be bound by the PTO's decisions concerning prior art and did not contemplate being bound by any decisions concerning fraud or inequitable conduct, when at the time they filed their motion they fully intended to argue issues of fraud and inequitable conduct before the patent office, strikes the court as bordering on bad faith. Defendants led both plaintiff and the court to believe that they would be bound by any decisions of the PTO in which they participated. The court relied upon this understanding in requiring plaintiff to apply for reissue of its patent. Defendants will not now be heard to argue that they did not agree to be bound by the PTO's decisions on matters which defendants themselves raised before the PTO. The court holds that defendants are bound by the decision of the PTO as to any matters within its jurisdiction.

## II. JURISDICTION OF THE PATENT AND TRADEMARK OFFICE TO CONSIDER ISSUES OF FRAUD AND INEQUITABLE CONDUCT IN A REISSUE PROCEEDING.

■ It appears settled that the Patent and Trademark Office may consider issues of fraud and inequitable conduct when deciding whether to issue or reissue a patent. 37 C.F.R. § 1.56, known as Rule 56, codifies a long-standing patent office requirement of candor and good faith on the part of those seeking patents. Rule 56(d) provides that where there is clear and convincing evidence of fraud on the patent office or a violation of the duty of disclosure through bad faith or gross negligence in connection with any application, the Commissioner may reject the application.[1] Pur-

---

1. At the time defendants filed their petition to have plaintiff's application for reissue stricken, Rule 56(d) provided:

> An application shall be stricken from the files if it is established by clear and convincing evidence that any fraud was practiced or attempted on the office in connection with it or that there was any violation of the duty of disclosure through bad faith or gross negligence.

Because of procedural questions concerning whether a stricken application was appealable in the same manner as an application which had been rejected, and because of concerns raised by the court in *Digital Equipment Corp. vs. Diamond*, 653 F.2d 701 (1st Cir.1981), concerning the expertise of the PTO in evaluating issues of fraud and inequitable conduct, Rule 56 was amended in 1982, 1983, and again in 1984. *See* 47 FR 21751, May 19, 1982; 48 FR 2710,

suant to Rule 56 the Commissioner has stricken or rejected patents where there has been fraud in connection with the application or any related application. *See In Re Stockebrand*, 197 USPQ 857 (Comm'r Patents & Trademarks 1978); *In Re Altenpohl*, 198 USPQ 289 (Comm'r Patents & Trademarks 1976). Rule 56 has been upheld as a valid exercise of the Commissioner's rule-making powers under 35 U.S.C. § 6:

> Rule 56 was promulgated by the Commissioner pursuant to the authority granted by 35 USC § 6, "to establish regulations, not inconsistent with law, for the conduct of proceedings" in the PTO. In 1970, the Court of Customs and Patent Appeals held, in reviewing a denial of a motion to strike an original patent application, that Rule 56 was a proper exercise of the Commissioner's rule-making authority, and that the Commissioner was empowered thereunder to strike patent applications for "fraud," as broadly defined in the patent field. *Norton vs. Curtiss*, 433 F.2d 779, 793, 57 CCPA 1384 (1970). We think there can be no serious doubt, certainly not at this late date, that Rule 56 constitutes in general a valid exercise of the Commissioner's rule-making powers under 35 USC § 6, and therefore has the force and effect of law except as it may conflict with other

statutory or constitutional provisions. *Digital Equipment Corp. vs. Diamond*, 653 F.2d 701, 707–08 (1st Cir.1981). The court in *Digital Equipment* upheld the application of Rule 56 to reissue proceedings where the fraud had been in connection with the original application.

■ The patent office's authority to consider issues of fraud and inequitable conduct is not limited to fraud on the patent office itself. As the court stated in *Digital Equipment Corp., supra:*

> It is thus well established that a patent is rendered unenforceable by inequitable conduct—falling somewhat short of common law fraud—on the part of a patentee in his dealings before the Patent and Trademark Office. A logical corollary of this proposition, and the rationale on which the Rule 56 power to strike applications is based, is that "conduct which will prevent the enforcement of a patent after the patent issues should, if discovered earlier, prevent the issuance of the patent." 653 F.2d at 710 (quoting *Norton vs. Curtiss*, 433 F.2d at 792); *see also Ex parte Mallard*, 71 USPQ 294 (Comm'r Pat. 1946).

In *Norton vs. Curtiss*, 433 F.2d 779 (CCPA 1970), the court examined the role of the patent office in evaluating issues of fraud and inequitable conduct and concluded that

January 20, 1983; 49 FR 554, January 4, 1984. As amended, Rule 56 now provides in pertinent part:

> No patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or gross negligence. The claims in an application shall be rejected if upon examination pursuant to 35 USC 131 and 132, it is established by clear and convincing evidence (1) that any fraud was practiced or attempted on the Office in connection with the application, or in connection with any previous application upon which the application relies, or (2) that there was any violation of the duty of disclosure through bad faith or gross negligence in connection with the application, or in connection with any previous application upon which the application relies.
> (e) The examination of an application for compliance with paragraph (d) of this section will normally be delayed until such time as

> (1) all other matters are resolved, or (2) appellant's reply brief pursuant to section 1.193(b) has been received and the application is otherwise prepared for consideration by the Board of Appeals, at which time the appeal will be suspended for examination pursuant to paragraph (d) of this section. The prosecution of the application will be reopened to the extent necessary to conduct the examination pursuant to paragraph (d) of this section including any appeal pursuant to section 1.191. If an appeal has already been filed based on a rejection on other grounds, any further rejection under this section shall be treated in accordance with section 1.193(c).
>
> . . . . .
>
> (h) Any member of the public may seek to have the claims in an application rejected pursuant to paragraph (d) of this section by filing a timely protest in accordance with section 1.291. Any such protest filed by an attorney or agent must be in compliance with section 1.346.

there was no reason, "in logic or in law," why the patent office could not evaluate such issues in the same fashion as would a court of equity. *Id.* at 792, 793.[2] Relying upon *In Re Heany*, 1911 C.D. 139, 171 O.G. 983 (1911), the court held that the Commissioner had both the authority and a duty to refuse to issue a patent where such patent would be held to be unenforceable in a court of equity.

 It seems clear, therefore, from the above cases that the PTO has the authority to consider any allegations of inequitable conduct which would render a patent unenforceable under the "clean hands" doctrine. It was the defendants in the present case who forced plaintiff to seek reissue of its patent, and it was defendants who urged the PTO to strike plaintiff's application on the grounds that plaintiff's "unclean hands" would render the patent unenforceable. Defendants argued to the PTO that the PTO had the authority to consider plaintiff's unclean hands and shall not be heard to argue here that the PTO lacked such authority. The court holds that the PTO did not exceed its authority in considering whether defendants' allegations that plaintiff had committed fraud on foreign patent offices, if true, would render plaintiff's U.S. patent unenforceable.

### III. THE PATENT AND TRADE-MARK OFFICE'S DECISION.

 The PTO expressly considered whether fraud perpetrated on foreign patent offices was grounds for striking plaintiff's application for reissue of its patent. Under the cases cited above, the PTO had the authority and the duty to consider whether defendants' allegations of plaintiff's "unclean hands" would render the patent unenforceable in a court of equity and whether the application for reissue should be stricken on that ground. The

PTO rejected defendants' argument that fraud on foreign patent offices was grounds for striking plaintiff's application. Since defendants agreed to be bound by the PTO's determinations as to the validity of the patent, and since defendants squarely placed the issue of plaintiff's unclean hands before the PTO, defendants are bound by the PTO's decision.

Even were this court disposed to review the agency's decision, the court would find no error. Defendants have referred the court to only one case dealing with the question of whether fraud on a foreign patent office renders a U.S. patent unenforceable under the "clean hands" doctrine. In *Plantronics, Inc. vs. Roanwell Corp.,* 185 USPQ 505 (S.D.N.Y.1975), the court stated:

> Even assuming, without deciding, that the British patent was obtained by fraud, this would not bar enforcement of the corresponding U.S. patent here in suit. As the U.S. Supreme Court stated in *Loughran vs. Loughran*, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219 (1934),
>
> > "Equity does not demand that its suitors shall have led blameless lives."
>
> Thus, as I stated in *Saxton Products, Inc. vs. United States Telephone Co.,* 182 USPQ 608, 609 (S.D.N.Y.1974), the courts have consistently ruled that fraud in obtaining one patent will not render unenforceable other patents in common ownership, even where the patents cover closely related inventions.

. . . . .

*S.H. Kress & Co. vs. Aghnides*, 246 F.2d 718, 113 USPQ 395 (4th Cir.1957) involved a situation factually indistinguishable from that at bar. In that case, plaintiff charged infringement of a U.S.

---

**2.** Although defendants argued in the reissue proceeding that the PTO had the authority and the duty to consider plaintiff's "unclean hands," they now argue that the PTO is "ill-equipped" to consider such issues. While the court in *Digital Equipment Corp. vs. Diamond,* 653 F.2d 701 (1st Cir.1981), did express some concerns in this respect, current PTO procedure provides that

examinations into issues of fraud and inequitable conduct are to be "conducted by examiners with legal training assigned to the Office of the Assistant Commissioner for Patents." Notice of Rule-Making, May 19, 1982, 47 Fed.Reg. 2174, *reprinted in* Pat.Tm. & Copy. J. (BNA), May 20, 1982; *See* D. Chisum, Patents, Vol. 3, § 11.03[4], p. 11–28.12—28.13 (Mathew Bender 1984).

patent based on an application filed under the International Convention claiming the benefit of the filing date of a prior application in Belgium, asserting that the U.S. and Belgian applications covered the same invention. The defendant offered to show that the plaintiff had previously represented to the Canadian Patent Office that the corresponding application which he filed there did not cover the same invention as the Belgian application. Thus, the alleged fraud was perpetrated in connection with an application for a Canadian patent on the same invention covered by the U.S. patent in suit. The court ruled that such fraud, even if proven, would not bar recovery on the U.S. patent, stating:

"Whether or not on another occasion [plaintiff] * * * made an inconsistent claim in Canada to obtain a patent there, is an issue that we need not decide. If he made a misstatement there, this might bear upon the validity of his Canadian patent. It would not alter the fact that what he told the United States Patent Office was the truth and that the patent here was obtained without deception or fraud. Even if we were to assume what we are not prepared to adjudicate, that the inventor's representations to the Canadian Patent Office were untrue, this misconduct would not be so closely related to the proceedings in this country and the issuance of the patent to him here as to invalidate the grant or to constitute such unclean hands as to disentitle him to the relief he asks in this case." 246 F.2d at 725, 113 USPQ at 400–01.

Defendants' allegation of fraud by plaintiff in the procurement of the British patent corresponding to one of the three U.S. patents in suit thus does not state an affirmative defense, even if fully proven. *Plantronics, Inc. vs. Roanwell Corp.*, 185 USPQ 505, 506–07.

Defendants have agreed to be bound by the PTO's determinations as to the validity of the patent at issue in this case. The PTO has rejected defendants' argument that fraud on foreign patent offices would render the patent unenforceable, and the only authority before the court supports the PTO's decision. That decision was within the authority of the PTO to make. Defendants agreed to be bound by the PTO's decision and are estopped from contesting it.

## IV. THE MOTIONS PRESENTLY BEFORE THE COURT.

Defendants' second motion for summary judgment argues that the patent at issue in this case is invalid and unenforceable due to plaintiff's unclean hands in procuring foreign patents by fraud. As discussed above, defendants have previously made this argument to the PTO, and the PTO has rejected it completely. Defendants had agreed to be bound by the decisions of the PTO as to the validity of the patent at issue in this case and cannot now seek a second bite at the apple. Defendants' second motion for summary judgment is improper. Plaintiff's motion to enforce the agreement to be bound and to strike defendants' second motion for summary judgment is, therefore, GRANTED. Defendants' second motion for summary judgment shall be STRICKEN.

Plaintiff's motion for partial summary judgment seeks a declaration of the validity of the patent at issue in this case. Plaintiff's motion is founded solely on defendants' agreement to be bound by the decision of the PTO concerning the validity of the patent. As noted above, defendant has advanced the somewhat disingenuous argument that it only agreed to be bound by the PTO's decision regarding the '274 patent and that that patent no longer exists, having been surrendered to the PTO as part of the reissue proceeding. The court finds defendants' argument to be without merit. Defendants knew at the time they agreed to be bound that plaintiff would have to surrender the '274 patent as part of its application for reissue. The court finds, therefore, that defendants' agreement to be bound by the PTO's decision covers the Ford patent which came out of the reissue proceeding as well as the '274 patent which was surrendered.

For purposes of this lawsuit, defendants are bound by the PTO's decision as to the validity of the Ford patent and are estopped from contesting it. The Ford patent is therefore valid for purposes of this lawsuit. The '274 patent is valid insofar as its claims are identical to the claims of the Ford patent.[3] To the extent of any identity between the Ford patent and the '274 patent, the Ford patent relates back to the '274 patent. Questions of infringement of the Ford patent shall, therefore, relate back to the '274 patent. Plaintiff's motion for partial summary judgment as to the validity of the patent at issue in this case[4] is GRANTED.

### V. CONCLUSION.

In sum, plaintiff's motion to enforce defendants' agreement to be bound and to strike defendants' second motion for summary judgment is GRANTED. Defendants' second motion for summary judgment shall not be considered and shall be stricken from the record. Plaintiff's motion for partial summary judgment is GRANTED.

---

**3.** Any claims in the '274 patent which were not made a part of the Ford patent or which were modified in the Ford patent are excluded from today's judgment of the validity of the '274 patent. Further proof as to the reasons why such claims were not carried over into the reissued patent will be necessary before the court can determine whether such claims are valid.

**4.** At the conference on September 14, 1984 the court granted plaintiff's motion to amend the complaint to assert infringement of the Ford patent. The court wishes to emphasize that it allowed the amendment for purposes of clarification only and not because it believed that the reissued patent was a completely separate patent which did not relate back to the '274 patent.