28 C.C.P.A. (Patents)

### In re SHERMAN.

### Patent Appeal No. 4498.

Court of Customs and Patent Appeals.

July 2, 1941.

F. Llewellyn Walker, of Dayton, Ohio (Marston Allen, of Cincinnati, Ohio, and Riordon & Riordon, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected all of appellant's claims—1 to 16, inclusive—in an application for a patent relating to manifolding material. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed.

Appellant regards claims 2, 4, 6, 11 and 16 as illustrative, but we think it will be sufficient to regard claim 2 as illustrative. In doing so, we will call attention to certain features expressed in some of the other claims. Claim 2 reads as follows: "2. A manifolding assembly including a plurality of relatively adjustable superposed record strips each having a succession of longitudinally spaced record receiving areas to be progressively aligned and registered at a record receiving position with like areas of another strip of the assembly, each strip having therein a succession of spaced feeding holes for engagement of a pin type feeding device simultaneously with its engagement in corresponding holes of another strip, characterized by a succession of feed holes therein disposed in a longitudinal undulating curvalinear line."

The references relied upon are:

Rearick, 1,255,338, February 5, 1918.

Byron, 1,896,836, February 7, 1933.

Sherman, 2,149,316, March 7, 1939.

The alleged invention relates to manifolding papers which have holes longitudinally spaced along each margin of the paper so that tabulating machines which are equipped with pin-type feeding means will engage the feed holes and progressively

advance the sheets past the writing position. In view of the fact that several sheets including copy material may be fed through the machine simultaneously, it is a matter of importance that the spacing of the feed holes shall be arranged so as to facilitate the firm engagement by the feeding pins. The general principle of feeding material through this character of machine by the use of pins entering into punched holes in the margin of the paper is old in this art, as well as in other similar arts.

The appellant here claims to have made an improvement over the reference patent to him, Sherman, 2,149,316. In that patent are disclosed feeding holes arranged in "serpentine succession" and it describes feeding holes as being staggered in diagonally offset alternating directions. Said patent emphasizes the fact that one of the objectives of the invention is to provide an article with a "distinctive arrangement."

The patent to Rearick discloses pin holes for moving motion picture film. The holes there are in staggered relation. One form of the invention shows four rows of holes; another, two rows of holes; and another, three rows of holes. In each of the embodiments, the holes of one row are in staggered relation to the holes of the other.

The Byron patent relates to the same subject matter as Rearick and shows rows of holes arranged in different relation to each other.

In the present application, the holes shown in the Sherman patent and those shown in the instant application are described in the following language:

" * * * In the companion application referred to, the holes are arranged in two straight lines in which the holes are alternately disposed in a zig-zag relation, of one hole to the right and the next to the left, etc. The present embodiment differs therefrom by providing groups or pluralities of holes extending progressively in one direction and the next group or plurality extending in the opposite direction. Such progression may be on alternately curved lines, thus forming undulating rows or serpentine succession.

"Likewise, such echelon arrangement may be by straight lines, wherein the succeeding groups are disposed in alternating inclined relation with the line of travel, or such succeeding groups may be inclined in the same direction. By changing the re-lation of the groups of reversely aligned holes, whether straight or curved, with the transverse division lines, and by varying the 'phase' or degree of correspondence of the holes in one margin of the strip with those at the other margin, innumerable combinations and different relations may be achieved. Thus, by differently disposing the arrangement of holes and correspondingly arranging the pins of the feeding devices, strips may be rendered peculiar to certain writing or recording machines, and their use in other machines prevented. Not only does such arrangement of consecutive, unaligned holes readily adapt itself to matching stationery with particular recording machines, but it enables a vast number of combinations of hole arrangements by which a system of individual machine supplies may be developed."

The examiner rejected all the claims as not being inventive over applicant's patent. He also rejected claim 13, which calls for record material with "a series of longitudinally spaced holes arranged in a curvalinear succession," and claim 15, which calls for a record material having "in at least one margin thereof a series of longitudinally spaced holes arranged in an undulating curvalinear line" upon the patents to Rearick or Byron. Byron discloses several rows of holes and it was the view of the examiner that by selecting the proper holes a line could be drawn which would answer to the limitation "in curvilinear succession."

Claims 14 and 16 were rejected upon the Byron reference. The examiner concluded that by selecting the holes in the references, a line might be drawn so as to meet the limitations of these claims.

The Board of Appeals said:

" * * * We have given due consideration to appellant's argument as to the non-analogy between motion-picture films and manifolding material but even if at one time these arts were considered non-analogous with respect to the subject matter under consideration, it is believed that after the serpentine arrangement had been taken from the motion-picture film art, there was no invention in then borrowing other similar formations.

"It is thought that there is no materially different result produced by arranging the echelon formation in alternate rather than in the same direction, as shown in Byron."

Appellant in this court has argued at considerable length to the effect that there

would be no double patenting if the claims in the instant application were allowed; that the instant application was copending with the application of his patent, and that the instant application calls for a distinctly different species of a generic invention. He urges that the claims at bar are not readable on the disclosure of his patent, define invention over that patent, and, therefore, should be allowed in the instant application. This contention was evidently made to the board in a petition for reconsideration. The board made the following answer:

"It appears to be appellant's opinion that an applicant may obtain two patents if he discloses two species, even if these species are not patentably different from each other. We do not consider that this is the law. It is believed that the claim in the application should be regarded as defining a structure involving invention over the species claimed in the patent before the second patent can be granted. As indicated in our decision, we do not consider that 'the eschelon formation in alternating directions' patentably distinguishes or involves invention over the zig-zag species of appellant's patent.

"We also believe that 'a longitudinal undulating curvilinear line' means the same thing as 'the serpentine formation' set forth in claims in the patent and therefore claims of this nature in the present application are as generic as the serpentine formation claims of the patent."

We are in agreement with the conclusion reached by the board. It did not treat the Sherman patent as prior art and even though the two applications were copending, when appellant takes out a patent on one of the applications it is well settled that the patent may be cited as showing what appellant has already received in the way of patent claims. This, of course, means that the second independent application must disclose invention over and above the claims in the first. Otherwise, if the latter is not inventive over the former, appellant's monopoly would be extended or at least that presumption would prevail.

In the instant application, applicant has urged that one of the purposes of the alleged invention is for "individualizing the stationery so that it can not be used interchangeably on different writing machines or strip dispensing apparatus."

It seems obvious that appellant desires to have patent coverage for a variety

of arrangements of holes on manifolding strips so as to destroy the interchangeability of material and apparatus. While the peculiar arrangement of holes is urged as having an improved effect in the movement of the paper, it is not believed that it required inventive skill to arrange the holes so as to obtain the slight improvement, if any results.

We are in agreement with the decision of the Board of Appeals. It committed no error in affirming the decision of the examiner rejecting all the claims of the application and its decision so doing is affirmed.

Affirmed.