29 C.C.P.A.(Patents)

In re CHRISTMANN et al.

Patent Appeal No. 4604.

Court of Customs and Patent Appeals.
May 4, 1942.

Ellis S. Middleton, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Judge.

This appeal presents but one question for decision, and that one relates to double patenting. The Primary Examiner of the United States Patent Office rejected all appellants' claims in their application filed April 18, 1940, chiefly on the ground of double patenting. The claims in said application define a reaction product.

The eight claims on appeal differ in scope only. The Board of Appeals of the United States Patent Office was of the opinion that claims 1, 2, 3, and 6 were illustrative, and we also think they correctly illustrate the subject matter of all the claims. They read:

"1. A reaction product of hydrofluosilicic acid and a guanidine.

"2. A reaction product of hydrofluosilicic acid and a substituted guanidine.

"3. A reaction product of hydrofluosilicic acid and an alkyl guanidine.

"6. A reaction product of hydrofluosilacic acid and a diphenyl guanidine."

The examiner rejected the claims as unpatentable over the claims of the applicants' patent 2,205,789, which issued June 25, 1940. Upon appeal to the board, the examiner's decision was affirmed, and appellants have here appealed from the decision of the board.

The examiner rejected claim 2 upon the ground that it is indefinite. This ground was reversed by the board and needs no consideration here.

The application which resulted in appellants' patent 2,205,789 originally contained the claims which are here involved (they were claims 9 to 16 in that application). The application also contained eight other claims (the claims allowed in the resultant patent), of which claims, No. 1 is regarded as illustrative and reads as follows:

"1. An insecticidal composition including a reaction product of hydrofluosilicic acid and a guanidine."

The claims of appellants' application (which application grew into a patent) were denied by the examiner in view of the prior art, the board affirmed the examiner's decision, and when appeal was taken to this court, we reversed the decision of the board, holding that appellants

had developed a new product which was shown to have utility. The only utility shown in the record was as an insecticide. This decision was handed down on December 4, 1939. In re Christmann et al., 107 F.2d 607, 27 C.C.P.A., Patents, 708. Before the issuance of the patent, appellants filed the instant application and let the other application go to issue.

As before stated, the first application contained the claims here involved, and they were cancelled. According to the statement of the examiner in the instant case, as no requirement for division had been made, they were rejected upon the ground that they were not "patentably different from claims 1 to 8, respectively" (claims 1 to 8 being the claims before this court in Re Christmann et al., supra).

The instant application calls merely for broad claims to the reaction product as such. The application makes no mention that it is useful for any purpose other than as an insecticide. Appellants here contend that they are entitled to a broad patent on the product as such since they have shown utility, and particularly since they submitted affidavits to the board upon petition for reconsideration, which, they claim, show that the material has, in addition to its use as an insecticide, utility as a rodenticide and as a rubber accelerator.

The board, under Patent Office Rule No. 138, 35 U.S.C.A. Appendix, could not properly admit the affidavits without remanding the case to the examiner; yet it could, within its discretion, refuse to remand the case. In effect, it seems that is what the board did. Instead of remanding the case it stated that:

"The situation has been considered in light of the additional argument and accompanying affidavits without finding any reason for changing our conclusions or necessitating further discussion."

We think that the board was correct in its action on this question and that the affidavits, therefore, are not properly before us.

On the ground of double patenting, the examiner had the following to say:

"The herein presented claims 1 to 8 were originally presented in the file of patent 2,205,789 as claims 9 to 16, respectively, and were cancelled without argument upon being rejected as not being 'patentably different from claims 1 to 8, respectively.'

"No requirement for division was ever made. Applicants, after winning their appeal in the U. S. Court of Customs and Patent Appeals upon the composition claims, attempted to reinsert claims identical with the cancelled claims 9 to 16, but were not allowed to do so for the reasons given in paper No. 18 of the patent file. If applicants desire to contest the question of double patenting of the compound claims over the composition claims, they could have continued to prosecute these claims after rejection instead of cancelling them. After the refusal to reinsert the theretofore cancelled product claims, applicants could have petitioned the Commissioner or they could have filed a continuation case incorporating both composition and product claims to contest the question. It is submitted that the prior case, U. S. patent 2,205,789, was the proper case in which to decide this question."

On the same subject the Board of Appeals said:

"It appears that claims like or equivalent to the present claims were presented in the record of patent 2,205,789 but that all the claims of the patent were limited in the preamble to 'An insecticidal composition including.' The body of the claims of the patent is apparently similar to the body of the claims presented here. It is stated in the brief that applicants voluntarily cancelled claims of the present type. It is stated in the examiner's answer that applicants' brief on appeal in the patent record indicated that counsel did not believe that there was any difference in scope between the cancelled claims like those here presented and the claims left in the patent limited to the insecticidal.

"After giving careful consideration to the record, it is our opinion that broader claims may not now be properly allowed even conceding that claims of the present type were presented in this application before date of issue of the said patent. In view of the record it is our conclusion that it would constitute an extension of the monopoly to now grant claims that are broader than those standing in the patent and which would constitute the vital part or substance of the patented claims in addition to being broader in mere form. This appears prohibited by Palmer Pneumatic Tire Co. v. Lozier [6 Cir.], 90 F.

732 and Miller v. Eagle Mfg. Co., 151 U.S. 186 [14 S.Ct. 310, 38 L.Ed. 121] as well as by analogy to Underwood et al. v. Gerber et al., 1889 C.D. 519 [C.C., 37 F. 682, affirmed 149 U.S. 224, 13 S.Ct. 854, 37 L. Ed. 710]."

The Solicitor for the Patent Office, on the subject of the invention of the instant application and that of the patent being the same, has this to say:

"The situation here presented is not one in which a substance which is known to be useful for some purposes is found to be unexpectedly useful for another, unrelated purpose. In the present case it would appear that either the composition was produced expressly for use as an insecticide or that was the obvious use which suggested itself as soon as the composition was produced. Certainly there is nothing to suggest that the production of the composition represents one inventive act and the idea that it could be used as an insecticide, another.

"The idea that there is but a single invention involved is materially strengthened by appellants' own conduct. As appears from the examiner's statement, appellants originally presented the claims here involved as claims 9 to 16 of their application which has now matured into patent No. 2,205,789. The examiner rejected these claims as not being patentably different from claims 1 to 8, which claims now appear in the patent. Appellants did not traverse this rejection but canceled claims 9 to 16 without argument. If this conduct does not constitute an actual estoppel to question, in the present application, the holding that the two groups of claims are not patentably distinct, it at least affords strong evidence that that holding is correct. It is to be noted that the appellants themselves regarded the application which has now been patented as the proper place for the claims here involved, and that it was only after they were unsuccessful in obtaining them there that the contention that they were separately patentable was advanced." [Record numerals omitted.]

Under the circumstances above related it seems proper to hold that in deciding the issue presented in this appeal we must consider that the instant record affords no proof, available for our consideration, of any utility of the claimed compound except that which is described in the patent. Therefore, the sole issue presented is whether or not the applicants, under all the circumstances of this case, may, in the manner related, file an application, copending with the patent application, and claim broadly a new compound as a separate invention in view of their obtaining, in the manner related, a patent for the same compound as used in an insecticide.

■ It seems clear to us that appellants should not be permitted to claim in the instant application that which was contained in the original application and cancelled upon being rejected as defining nothing inventive over the invention of the other claims therein. Appellants' acquiescence in the rejection and cancellation of the claims amounts, in our opinion, to a binding admission that the inventions are the same. Cases somewhat in point are Leggett v. Avery, 101 U.S. 256, 25 L.Ed. 865; American Road-Mach. Co. v. Pennock & Sharp Co., 164 U.S. 26, 17 S.Ct. 1, 41 L. Ed. 337; In re Stanton, 86 F.2d 337, 24 C.C.P.A., Patents, 708; In re Wadsworth et al., 107 F.2d 596, 27 C.C.P.A., Patents, 735. A pertinent authority is Rivise, The Preparation and Presentation of Patent Applications, page 100, § 103.

■ Each application must state some utility because patents are granted only upon a showing that a useful invention or discovery has been made. We think appellants' monopoly under their said patent would be improperly extended by the allowance of the instant claims. If appellants were entitled to broader protection on their invention than they now have, it was their duty to have acquired it at the proper time, as provided by law.

Appellants argue at great length, citing certain decisions which we need not discuss, that the allowance of the instant claims would not be double patenting. Before the board, on petition for rehearing, they contended that although the practice of the invention of the patented claims would infringe the claims on appeal, the practice of the invention of the appealed claims would not infringe the claims of the patent.

The claims in the instant case are not directed to any particular use although, in the manner stated, appellants rely in part upon the new use to justify their contention for allowance of the new claims. Unquestionably, under the stated circumstances the allowance of the appellants' claims would be an extension of the appellants' monopoly not warranted by law. If they were to obtain a patent including the in-

stant claims, they would presumptively be given a monopoly for 'seventeen years on the exclusive use of the compound for any purpose.

Certain cases seem to be very much in point. In Re James, 83 F.2d 313, 315, 23 C.C.P.A., Patents, 1124, the appellant had obtained a patent on a composition as an insecticide and sought to obtain a second patent containing narrower claims and also claims to the composition. That seems to be, in some respects, the situation at bar. In denying the appellant right to a second patent, we said:

"Appellant's arguments have received our careful consideration, but we are unable to escape the conclusion reached below that double patenting would result from the allowance of the claims. The mere fact that appellant may have made certain disclosures as to properties not disclosed in the patent is not of itself sufficient to support an additional patent. * * *" [Note: No such disclosures were made in the instant application.]

In re Byck, 48 F.2d 665, 666, 18 C.C.P. A., Patents, 1208, appellant had obtained a patent on a composition and described it as useful as an electric insulator. His claims were to the composition. By means of a copending application, the claims of which defined the use of the composition as an insulator, he later sought a second patent. This court there said:

" * * * It would shock one's sense of justice if an inventor could receive a patent upon a composition of matter, setting out at length in the specification the useful purposes of such composition, manufacture and sell it to the public, and then prevent the public from making any beneficial use of such product by securing patents upon each of the uses to which it may be adapted.

"In the case at bar, appellant received a patent upon his composition of matter because he had invented something new and useful. He could not have received such patent unless he had disclosed its utility. Such disclosure of usefulness did not constitute separate inventions, but an essential part of a single invention. * * *"

In the case of In re Barge, 96 F.2d 314, 316, 25 C.C.P.A., Patents, 1058, which to some extent parallels the instant situation, we stated that:

"It is well settled that, in instances like that at bar, where an applicant obtains a patent for one invention related to the same general subject matter as is disclosed in a later filed application, like that under consideration here, he is not entitled to two patents if his disclosure in the later application is not inventive over that for which he has already received a patent. The fact that he files his second application before the issuance of his first patent does not change the situation as long as the second application is not in the nature of a divisional one. * * *"

Other cases which support our conclusion are In re Land, 27 C.C.P.A., Patents, 863, 109 F.2d 246, and In re Sherman, 28 C.C.P.A., Patents, 1329, 121 F.2d 527.

We think the board, in the instant case, reached the right conclusion, and its decision affirming the examiner's rejection on the ground of double patenting is affirmed.

Affirmed.