The WEATHERHEAD COMPANY and Paul D. Wurzburger, Plaintiffs-Appellants,

v.

DRILLMASTER SUPPLY COMPANY and James E. Rutledge and Kenneth C. Horn, Defendants-Appellees.

No. 11308.

United States Court of Appeals Seventh Circuit.

Oct. 28, 1955.

Rehearing Denied Dec. 8, 1955.

F. O. Richey, Cleveland, Ohio, George N. Hibben, Chicago, Ill., H. F. McNenny, D. W. Farrington, Cleveland, Ohio, for plaintiffs-appellants, Davis, Lindsey, Hibben & Noyes, Chicago, Ill., Richey, Watts, Edgerton & McNenny, Cleveland, Ohio, of counsel.

No appearances for defendants-appellees.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiffs-appellants are the assignees of two patents: one, No. 2,139,413, issued December 6, 1938, on a joint for pipe connections, and the other, No. 2,171,217, issued August 29, 1939, on a metal packing ring for use with, as a part of, such a joint for pipe connections as was described in the first patent. Plaintiffs brought this action for infringement of both patents. The trial court held that Patent No. 2,139,413 (hereafter referred to as 413) was valid and infringed, and that Patent No. 2,171,217 (hereafter referred to as 217) was invalid for lack of invention, in that it did not show invention beyond patent 413 which was first issued: that the particular ring disclosed and claimed in patent 217 was within the skill and would have been obvious to a person having ordinary skill in the art.

Both patents were applied for by and issued to the same man, Hans Kreidel, and the applications therefor were co-pending for several months in the patent office.

Before Kreidel's basic invention, covered by patent 413, the problem of how to join pipes that were to withstand high pressures had not been satisfactorily solved. The most common methods involved cutting threads in the pipe which, of course, reduced the thickness of the pipe where they were cut and thereby lessened the ability of the pipe to carry loads under high pressures. If threads are cut in a pipe that is to carry high pressures, the extra thickness of the rest of the pipe is wasted. Kreidel was the first to develop a joining device that would not weaken the pipe and yet would hold the joint together under high pressures.

Kreidel's invention as disclosed in his first patent, 413, holds the pipe in place by means of a metal packing ring which fits around the pipe, and has a forward cutting edge which is forced down until it cuts into the pipe raising a small burr and holding the pipe securely so that it cannot slip backwards. The cutting does not weaken the pipe because the cutting edge remains pressed firmly in the grooves cut in the pipe, taking the place of the metal of the pipe which has been displaced.

The joint has three parts: (1) the tubular connecting piece with a funnel-shaped mouth flaring outwardly into which the pipe is placed, (2) the packing ring which holds the pipe against the tubular connecting piece by cutting into it, and (3) a nut which screws onto the connecting piece and presses the packing ring so that its forward edge passes inside the flared end of the connecting piece and is then squeezed down into the pipe as the nut pushes it farther forward. As the nut is tightened, the packing ring is pushed farther into the flared end of the connecting piece where it becomes smaller and smaller until it cuts into the pipe and thereby holds it firmly against the shoulder of the connecting piece.

The metal of which the packing ring should be made is not specified in patent 413, which says only that the ring should be " * * * of material sufficiently hard to shear [cut] said tube [pipe] and being sufficiently ductile to be radially contracted to an internal diameter substantially less than the external diameter of said tube * * *."

Appellants' patent 217 describes an "improved" metal packing ring for use with the type of pipe joint disclosed in patent 413. Patent 217 describes a packing ring identical in structure and operation to that disclosed in patent 413. The only claims in 217 not in 413 are that the ring should be made of low carbon steel which has been surface hardened by means of a potassium cyanide bath. This will provide a hardened surface portion to provide cutting edges for cutting into the pipe and a relatively soft core that can be deformed enough to bring the hard cutting edge in contact with the pipe. Patent 217 also claims the idea of coating certain surfaces of the ring with cadmium so that it will slide more easily when the ring is being forced into the funnel end of the connecting piece.

The appellants argue that the packing ring claimed in 217 is different in form from that claimed in 413. They insist that 413 claims only a ring with a plurality of cutting edges and that 217 claims only a single cutting edge. An examination of the patents shows that they both claim a ring with either a single or plurality of cutting edges. Claim 8 of patent 413 claims, " * * * a sleeve having an annular part with *an* edge sufficiently hard to cut into the tube * * *." (Our emphasis.) This language by itself clearly claims a single edged ring, and when illustrated by figures 1, 2 and 3 of the drawings filed with the application, there can be no doubt. The first claim in patent 217 claims a " * * * packing ring for use with tube couplings of a type described * * *." In the description in patent 217 this paragraph appears:

"In the drawing, two embodiments of the invention are shown

and in each a packing ring is provided with only one cutting edge for purposes of illustration."

Nothing more need be said on this subject. The only difference in claim in the second application is that a specific metal is named which has the general qualities that the first application specified (*i. e.*, "* * * of material sufficiently hard to shear said tube and being sufficiently ductile to be radially contracted * * *."—taken from Claim 11 of patent 413).

■ The trial court held that 217 does not disclose invention over 413, and that the specific ring disclosed in claim 12 of patent 413 was within the skill of and would have been obvious at the time of the invention claimed in patent 217 to any mechanic skilled in this art. However, the appellants argue that, because the two patents were copending, 413 is not part of the prior art as far as 217 is concerned, and that, therefore, 217 need not disclose or claim an invention over 413. They cite several old cases, Pyle National Co. v. Lewin, 7 Cir., 92 F.2d 628; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259, that appear to support their position and ignore a large number of more recent cases that seem to be against them. This may be partially explained by the fact that the decisions concerning copending applications and double patenting seem to contain some conflicting statements as to the rules and their proper application. It is clear, however, that copending applications on which patents are granted to the same inventor must pass two tests of validity. They must constitute invention over the prior art, and they must be "different" from each other in order to avoid double patenting. If double patenting is found, the later of the two patents is invalid.

It was early held that one copending patent was not prior art as to the other, and that the later of the two did not have to show invention over the earlier. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259. In that case the patents were granted to the same inventor. The court, in an opinion by Judge Learned Hand, held that the inventor did not have to show a difference between the two amounting to invention in order to avoid double patenting. In Western States Machine Co. v. S. S. Hepworth Co., 2 Cir., 147 F.2d 345, with Judge Hand again speaking for the court, it was held that an earlier copending patent *was* part of the prior art and that the later patent must demonstrate invention beyond the first. Logically, this holding would obviate the defense of double patenting since an improvement sufficient to embody invention would necessarily be different enough to rule out double patenting.

In Old Town Ribbon & Carbon Co. v. Columbia R. & C. Mfg. Co., 2 Cir., 159 F. 2d 379, the same court, in an opinion by the same judge, held that the first of copending patents was *not* prior art as to the others, and that it could be shown to prove a prior inventor but not to show the state of the art for the purpose of determining whether the second patent disclosed invention. This is the position taken in most modern cases in the Courts of Appeals. B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 122 F.2d 900, 913; Sherwin-Williams Co. v. Marzall, 88 U.S.App.D.C. 374, 190 F.2d 606.

■ Strangely enough, however, a different rule of law developed in the Court of Customs and Patent Appeals. In In re Sherman, 28 C.C.P.A., Patents, 1329, 121 F.2d 527, a case decided a few months before the Sturtevant case, supra, the court in dealing with two patents held by the same inventor said: "* * * even though the two applications were copending, when appellant takes out a patent on one of the applications it is well settled that the patent may be cited as showing what appellant has already received in the way of patent claims. This, of course, means that the second independent application must disclose invention over and above the claims in the first." 121 F.2d at page 529. We do not see how this case can be read as holding anything other than that the "dif-

ference" necessary to avoid double patenting must be great enough, and of the type necessary, to embody the familiar concept of invention. It is to be understood that the term "double patenting" should apply only to copending applications upon which patents have been granted to the same inventor. Hoar, Patent Tactics and Law, 130 (revised ed. 1940). This is not an isolated case; the Court of Customs and Patent Appeals has been holding this for some time. In re Christmann, 29 C.C.P.A., Patents, 1037, 128 F.2d 596; In re Copeman, 30 C.C.P.A., Patents, 962, 135 F.2d 349; Application of Loiseleur, 34 C.C.P.A., Patents, 765, 158 F.2d 309; Application of Bigelow, 39 C.C.P.A., Patents, 835, 194 F.2d 550. Contrast the United States Court of Customs and Patent Appeals' treatment of double patenting in the above cases with a typical Court of Appeals' treatment in Jordan v. Hemphill Co., 4 Cir., 180 F.2d 457. The Court of Customs and Patent Appeals, however, has continued to hold that copending applications are not prior art as to each other, but this means only that, when the applications were made by the same inventor and the doctrine of double patenting applies, the later patent need not show an inventive advance over what was disclosed but not claimed in the earlier patent. When determining whether or not double patenting exists only the claims are compared, and the claim of the later patent must show an invention beyond the claim of the first.

 The test for double patenting adopted by the Court of Customs and Patent Appeals seems to us to be the correct one. The principal reason for prohibiting double patenting, is to prevent inventors from getting more than the seventeen year monopoly on one invention. An extension of monopoly is only justified by the presence of invention which grants the second application as much dignity as the first. In the instant case, for example, the appellants have absolutely nothing to gain by patent 217 except an extension of their monopoly by almost one year. No one could man-

ufacture the device claimed in 217 without infringing 413. Application of Coleman, 38 C.C.P.A., Patents, 1156, 189 F. 2d 976, 979. The later patent is not at all necessary to protect the packing ring described therein whether made out of surface hardened, low carbon steel or anything else.

We agree with the finding of the master adopted by the District Court, that Patent No. 2,171,217 does not embody invention over Patent No. 2,139,413. Therefore, under the test we have adopted, the appellants are guilty of double patenting and their second patent (No. 2,171,217) is invalid.

The judgment of the District Court is Affirmed.